## Gray *against* Griffith.

If goods be sent to a merchant who refuses to receive them because they are not such as were ordered, and under pretence of re-delivering the same to the order of the owner, spurious articles are substituted, and the genuine ones are not returned or accounted for, the owner may waive the tort, and recover the price for which the latter may have been sold, in an action for money had and received: but not upon a count for goods sold and delivered.

ERROR to the district court of *Allegheny* county.

A. and A. R. Griffith against James Gray. This was an action on the case in assumpsit, in which the plaintiffs charged the defendant in the first count, with a note for 323 dollars. In the second count, with goods, wares and merchandize, sold and delivered on the 11th of June 1832, and a promise to pay for the same on the 1st of November 1832. The third count was on a *quantum valebant* for the same goods. The fourth count was for money laid out and expended. The fifth count was special for interest on a note of 1000 dollars.

To this declaration the defendant pleaded *non assumpsit, non assumpsit infra sex annos*, payment and set-off.

The evidence went to show, that on the 11th of June 1832, the plaintiffs, merchants in Baltimore, sent to the defendant, residing in Pittsburgh, 20 dozen Waldron & Waldron & Griffen's scythes, and charged him with them in their books of entry of that date. The defendant, however, always refused to receive these scythes as his, and denied any liability for them, in which the plaintiffs acquiesced by sending to their agent before February 1833, an order to receive them from the defendant, who had them in his custody. The agent received them, and sold them at auction, by order of the plaintiffs.

[Gray v. Griffith.]

The plaintiffs alleged, that the scythes thus delivered back to their agent, in pursuance of their order, were not the scythes they had sent, which were genuine Waldron & Waldron & Griffen's scythes, but a spurious article in imitation of them, worth from three to four dollars per dozen less than the genuine; and he proved, that in May 1832, he had sold to the defendant, scythes in imitation of the Waldron scythes, a spurious article, and charged as such.

The court below instructed the jury as follows:—

" The plaintiffs were hardware merchants in the city of Baltimore, and in November 1838, brought this suit against the defendant, James Gray, of this city, in which they state their claim to be as follows:—1. Bill for 20 dozen scythes, sold June 11, 1832, 285 dollars and 25 cents. 2. A note from defendant to plaintiffs, for the sum of 321 dollars and 86 cents, dated the 3d of September 1831, payable in 12 months. 3. A balance of interest on a former judgment, 50 dollars, admitted by defendant to be due when plaintiff, at his request, assigned the judgment to the person who advanced the money to satisfy it. 4. For costs paid by plaintiffs in a suit instituted by defendant in Baltimore, on which plaintiffs became his bail for the costs, amounting in all to 55 dollars and 76 cents. To these demands the defendant has entered several pleas: 1. That he did not assume. 2. That he did not assume within six years. 3. That he has paid, and set off, besides other pleas not necessary to be noticed.

" And first as to the bill for the scythes. To this demand the statute of limitation applies, unless there is something in the evidence to bring it within the exceptions. The exception as to merchants' accounts, does not apply, as it is a bill for a special order, and there is no continuing account between the parties. The acknowledgment of indebtedness by defendant, cannot, by any fair construction, be applied to this account, as defendant's letters show, that he always refused to receive these scythes, and denied any liability for them, in which also the plaintiffs acquiesced by ordering them to be delivered up to their agent.

" But it has been contended, that the scythes delivered up on plaintiffs' order to their agent, were not the same as those sent to defendant, but a different lot of inferior quality, and that the agent in accepting them, exceeded his authority, and therefore his act was void. It is true that when an agent exceeds his authority his act does not bind his principal.

" The order to Nicholas Griffith, to receive this lot of goods from Mr Gray, is without date, but appears to have been given at least before the 19th of February 1833, as plaintiffs' letter of that date speaks of it as having been then given. The defendant is in possession of that order, which is *prima facie* evidence, that the goods were delivered to the agent. Nor is there a word of complaint in any of plaintiffs' letters, in evidence before you, written since that time, that the agent exceeded his authority, or that the right goods

[Gray v. Griffith.]

were not delivered to him; and while he urges the payment of the other debts, I do not see a syllable about these scythes, in any letter of plaintiffs after that date.

" If Mr Gray has been guilty of a fraud, in delivering a different article of an inferior value, and imposed upon the agent's ignorance, he ought to be made liable for the difference in value. Damages for a fraud cannot be recovered in this suit. But if Gray kept the lot sent him, and delivered others in their place, it would be a conversion of plaintiffs' goods, which would make him liable for them, and the plaintiffs may waive the fraud, and recover in assumpsit. But not having returned the scythes received, but sold them at auction, and applied the money to their own use, and having never till now discovered the act of their agent, they have no right to treat it as void, and charge Gray with the whole amount of the goods, without allowing for those received.

" But when a fraud is charged, it should be clearly and satisfactorily proved, and ought not to be assumed from slight and equivocal testimony. Is it clearly proved to you that the scythes were not the same? Mr Kennedy states that a lot of scythes, sent to his storehouse and taken away by Nicholas Griffith, were not of good quality. But does that prove they were not the same? or is it certain that the lot spoken of by the witness as taken by Griffith, and sold at auction, was the same transaction? If they were, why was not complaint made or suit brought before.

" Unless, therefore, you find that Gray did not deliver the lot of scythes, but a different and inferior article, the plaintiffs cannot recover this part of their demand. If you are satisfied he did, the plaintiff would have a right to recover the difference between those kept by Gray, and those delivered to their agent, and sold by him for their use, which would be 70 dollars. The facts are for you."

*Shaler*, for plaintiff in error.
*Dunlop*, for defendant in error.

The opinion of the court was delivered by

SERGEANT, J.—Had there been a count in the declaration for money had and received, the charge of the court would have been right, in stating that the plaintiff could waive the tortious conversion of the genuine scythes, and recover in assumpsit; for the plaintiff might go for the money, which the scythes might be presumed to have been sold for by the defendant. But the declaration, so far as it can embrace these articles, charges the defendant as purchaser, and there is no evidence that he ever was such; on the contrary, he uniformly denied this character, and his tortious acts will not authorize the viewing him as such. We, therefore, think the judgment must be reversed, and a *venire facias de novo* be awarded.

Judgment reversed and *venire facias de novo* awarded.