## Kellam *versus* Kellam.

1. An execution had issued against K., and his personal property was about to be sold at sheriff's sale. Being about to leave home, K. and his brother, W., entered into an agreement that the latter should bid off the property and return it to K., on being paid the amount he should bid for it, and for his trouble. W. bid off most of the property sold, but afterwards, for his own use and benefit, sold and disposed of the same, denied the agreement and refused to account. K. brought an action of assumpsit to recover damages to the extent of the value of the property bid in by W. The declaration contained the common counts and also a special count "for the value and price of property which the defendant bid in at sheriff's sale as the property of plaintiff, for the use and benefit of plaintiff, the same under an arrangement and agreement with plaintiff, being held for the plaintiff, but which the defendant sold and appropriated to his own use, contrary to the understanding and agreement between the parties :" *Held*, that although the count was inartificially drawn as it was not demurred to, nor any objection made to the admission of evidence thereunder, if the evidence showed a sufficient consideration to support the agreement of W., the omission to state it specifically in the declaration was not fatal to the right of K. to recover.

2. W. having disposed of part of the property for which he rendered no account, he was presumed to have received a sum of money equal to its value, and an action for money had and received would lie therefor.

3. The defendant requested the court to charge that there could not be a recovery on the special count, unless the property was bid in by W., under an express agreement to do so, and if he did so agree, yet if K. furnished no money for that purpose, and W. bought with his own money, the agreement was *nudum pactum* and void, and that the count could not be sustained or helped by evidence that W. dissuaded persons from bidding at the sheriff's sale. The court substantially so charged, with the qualification unless the jury also found that W. made use of artifice in dissuading persons present from bidding at the sale, on the ground of his agreement, and purchased the property much below its value, and then refused to return the property to K. when so requested. *Held*, that this was not error.

March 31st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Wayne county*: Of July Term 1878, No. 21.

Assumpsit by Peter Kellam against William T. Kellam, to recover damages to the extent of the value of certain personal property, upon an alleged agreement by the defendant to bid it in at a sheriff's sale for the plaintiff.

The declaration contained the common counts, with a special count for non-performance of contract. Defendant pleaded non assumpsit, payment, &c.

13 NORRIS—15

[Kellam *v.* Kellam.]

The other material facts will be found in the opinion of this court.

At the trial, before Waller, P. J., the defendant submitted, inter alia, the following points, to which are appended the answers of the court:

1. That the plaintiff cannot recover on the common counts in assumpsit in this case, unless the jury are satisfied that at the time of bringing this suit defendant had converted into money property which, at the time of such conversion, belonged to the plaintiff, and then the measure of damages would be the amount received by the defendant for the property so converted less the amount of his (defendant's) interest therein, if any, and the burden is on the plaintiff to prove the sale of such property and what it brought.

Ans. "We cannot affirm this point in the broad terms advanced in it. The defendant might have sold the property for much less than it was really worth, with a view to reduce his liability to plaintiff. Nor is it really necessary that it should be converted into money. Defendant might exchange or give away the property and avoid responsibility."

2. Plaintiff cannot recover on his special count except on the ground set forth in said count, viz:: That the property was bid in by the defendant for the plaintiff under an express agreement so to do. This count cannot be sustained or helped by evidence that defendant dissuaded persons from bidding at the sheriff's sale.

Ans. "The first part of this point is affirmed as to recovery on an express agreement, but we think the second clause of the point cannot be affirmed. We have already instructed you that the plaintiff may recover if you find from the evidence an agreement on the part of defendant to bid in the property for plaintiff and that he then made use of artifice in dissuading parties present from bidding at the sale, on that ground, and then refused, after purchasing the property much below its value, to return the property to plaintiff when so requested."

3. If defendant did agree with plaintiff to buy the property for him, and plaintiff furnished no money for that purpose, but defendant bought the property with his own money, the agreement was *nudum pactum* and void.

Ans. "We affirm this point unless defendant made use of his agreement to dissuade persons to bid and so bought the property below its value. We think such an arrangement would constitute defendant trustee mala fide of plaintiff and defeat the point."

Verdict for plaintiff for $949.75, and after judgment thereon defendant took this writ, and, inter alia, assigned for error the answers to the foregoing points.

*H. M. Seely*, for plaintiff in error.—Under the most liberal construction which the courts have given to these common counts

·[Kellam v. Kellam.

no recovery could be had on the count for goods sold and delivered. Such a claim would only ratify the sale by the sheriff for the price bid. But it may be argued, that the count for money had and received to the use of the plaintiff would sustain a verdict. Passing over the fact that there is no such count properly stated in the declaration, the courts have held uniformly that this count relates to money and not goods, to price and not value: Lee v. Gibbons, 14 S. & R. 105, 112; Rush v. Good, Id. 226; Bethlehem Borough v. Perseverance Fire Co., 31 P. F. Smith 445. The court seem to have misapprehended the purpose of the defendant's first point, and to have construed it as a denial of plaintiff's right of action, whereas it was a denial simply of a right to recover under the common counts in assumpsit.

In answer to the second point, while the court instructed the jury that plaintiff could only recover on an express agreement, still they refused to say that the count on an express agreement cannot be sustained or helped by evidence that defendant dissuaded persons from bidding at the sheriff's sale.

In answering the third point the court were correct: Dollar Savings Bank v. Bennett, 26 P. F. Smith 402; Carhart's Appeal, 28 Id. 100; Barnet v. Dougherty, 8 Casey 371.

But it was undisputed in this case, that plaintiff never paid or offered to pay defendant anything for the purposes of this sale, either before or after it occurred. Plaintiff and defendant both swear to this, so that under the ruling the agreement was void, if ever made, with this qualification, that if the "defendant made use of his agreement to dissuade persons to bid, and so bought the property below its value," the point would be defeated.

Repeating the suggestion before made, that there is neither allegation nor evidence in the case that defendant made use of any such argument to dissuade persons from bidding, how could the conduct on the part of the defendant suggested by the court supply a want of consideration and give vitality to a lifeless agreement? Defendant had no notice that he was to be charged as trustee *ex maleficio*. He was not prepared to meet such a charge.

*G. G. Waller* and *W. H. Dimmick*, for defendant in error.— When a person tortiously in possession of the goods of another, converts them into money, or securities equivalent to money, assumpsit for money had and received may be maintained against him for the amount so received. But it is to be remarked that the count for money had and received has always been looked upon as governed by equitable principles, and it lies only where the defendant ought, *ex œquo et bono*, to refund the money which he has received: Deysher v. Triebel, 14 P. F. Smith 383. This decision is quoted with approval in Bethlehem Borough v. Perseverance Fire Co., 31 P. F. Smith 432. Where one takes the per-

sonal property of another, the owner may waive the tort and maintain assumpsit for its value: McCullough *v.* McCullough, 2 Harris 295; Gray *v.* Griffiths, 10 Watts 433.

Where one about to bid upon property at a sheriff's sale falsely represents that he is buying for the defendant in the execution, and by such false representations prevents competition, and becomes the purchaser at an under price, the sale is void for actual fraud, and may be set aside by the former owner or a subsequent purchaser, without first paying or offering to pay the price bid for the property at such fraudulent sale: Sharp *v.* Long, 4 Casey 439; Dick *v.* Cooper, 12 Harris 221; Abbey *v.* Dewey, 1 Casey 416.

Mr. Justice MERCUR delivered the opinion of the court, May 12th 1879.

This was an action of assumpsit. The facts alleged by the defendant in error, and found by the jury, are substantially these. An execution had issued against him, and his personal property was liable to be sold at sheriff's sale. Being about to leave home he and the plaintiff in error entered into an agreement that the latter should bid off the property, and return it to Peter on being paid the amount he should bid for it, and for his trouble. In pursuance of this agreement William did bid off most of the property sold: but afterwards, for his own use and benefit, sold, disposed of and consumed the same; denied the agreement and refused to account for the proceeds thereof.

The evidence of the alleged agreement was amply sufficient to submit to the jury. Peter swore to it in express and positive terms. His testimony was corroborated by evidence of the declarations of William before the sale, and at the time thereof. Thus Simpson testified that on the day first appointed for the sale, he started to attend it, with a view of buying some of the property. On the way he met William who told him the sale was postponed. Witness stated to him his purpose in going to the sale. William replied he was going to bid off the property for Peter, and did not think it would be of any use for witness to go. In consequence of this he did not attend the adjourned sale. Legg testified that he went to the sale for the purpose of buying a span of horses. When he and Miller reached there some one stated that an arrangement had been made by which William Kellam was to bid in the property for his brother Peter. "Miller asked William if it was the case that he was going to bid it in for Peter. He said it was." Braman testified that he went to the sale to buy a cow; but William told him not to bid on the cows, that he was bidding them in for Peter; and this stopped his bidding on them. William's intention to keep whatever he should bid off and return it to Peter when he came home, is further shown by the testimony of A. C. Kellam. It is true, much of this evidence was contradicted

[Kellam v. Kellam.]

by William and his witnesses; but, nevertheless, it was for the jury to pass upon. The fact is, William did bid off most of the property, and at less than its value.

The declaration contained all the common counts, and also a special count " for the value and price of property which the defendant bid in at sheriff's sale as the property of the plaintiff, for the use and benefit of the plaintiff, the same, under an arrangement and agreement with plaintiff, being held for the plaintiff; but which the defendant sold and appropriated to his own use contrary to the understanding and agreement between the parties." It may be conceded that this count is not drawn according to the most approved form of pleading, yet it was not demurred to, nor was any objection made to the admission of any of the evidence. If then the evidence showed a sufficient consideration to support the agreement of William, the omission to state it specifically in the declaration, was not fatal to the right of Peter to recover.

Before this suit was commenced William had disposed of or consumed substantially all of the property which he had purchased. So far as we are able to discover, one set of sleighs is all that remained. He had undoubtedly sold and converted property of much greater value than the amount which he had bid, and a just compensation for his trouble. He had thus put it out of his power to restore the identical property. This suit was not to enforce specific performance of the contract; but to recover damages for a breach thereof, and for money had and received. It was not necessary to prove the precise sum of money that William had received to sustain the action, or to fix the measure of damages. Having disposed of much of the property for which he rendered no account, he is presumed to have received a sum of money equal to its value, and money had and received will lie therefor: Gray v. Griffith, 10 Watts 431; Bethlehem Borough v. Perseverance Fire Co., 31 P. F. Smith 445.

In the second and third points submitted by the plaintiff in error, the court was requested to charge there could not be a recovery on the special count unless the property was bid in by him under an express agreement to do so, and if he did so agree, yet, if Peter furnished no money for that purpose, and he, William, bought with his own money, the agreement was *nudum pactum* and void; and that the count could not be sustained or helped by evidence that he dissuaded persons from bidding at the sheriff's sale. The court substantially affirmed these points, unless the jury also found that he made use of artifice in dissuading persons present from bidding at the sale on the ground of his agreement, purchased the property much below its value, and then refused to return the property to Peter when so requested. Thus the defendant in error was denied the right to recover on the contract alone; but was required to establish the artifice and *mala fide* of William in making the pur-

[Kellam *v.* Kellam.]

chase. The verdict of the jury has established both the contract and the bad faith. It is contended by counsel for plaintiff in error, that inasmuch as there is no averment in the declaration of any fact which would make him a trustee *ex maleficio*, and Peter advanced no money, the agreement was of no binding force. In support of this view, reference is made to Barnet *v.* Dougherty, 8 Casey 371; Dollar Savings Bank *v.* Bennett, 26 P. F. Smith 402; Carhart's Appeal, 28 Id. 100. In all these cases the question was as to the evidence necessary, under the Statute of Frauds, to establish a resulting trust in lands. It was held that such a trust could be raised only from fraud in obtaining the title or from payment of the purchase-money when the title was acquired.

Inasmuch as the Statute of Frauds applies only to an interest in lands, and a promise to pay the debt of another, the decisions thereon do not apply to the present case. This being a contract about personal property only, its vitality is not destroyed by the fact that Peter did not furnish any money with which to buy the property at sheriff's sale. It follows that the answer of the court was more favorable to the plaintiff in error than he was entitled to receive. Instead of permitting Peter to recover on the contract upon satisfactory proof of a consideration to support it, he was required to also establish subsequent acts of bad faith of William sufficient to make him a trustee *ex maleficio*. The evidence of his acts and declarations at the sale tended to establish an agreement to bid in the property for Peter's benefit. As he thus acquired it at much less than its value and afterwards denied the agreement, it was evidence of his bad faith in the purchase. The publicity, given at the sale, of William's purpose to bid in the property for his brother, very reasonably and naturally operated to dissuade others from bidding on any article that he manifested a desire to purchase, and the court was justified in leaving to the jury so to find. The defendant in error was not permitted to recover damages for William's omission to bid off any property, but for that only which he did buy. The fourth assignment relates to an action in which a third person was a party, and the offer fails to show the grounds on which it was decided, hence there was no error in the answer of the court relating thereto. We discover nothing in the record of which the plaintiff in error has a right to complain.

Judgment affirmed.